UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| DORETHA H.[1], | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 2:20-cv-339 |
| | ) |
| KILOLO KIJAKAZI[2], | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

This matter is before the court on petition for judicial review of the decision of the Commissioner filed by the plaintiff, Doretha H., on September 21, 2020. For the following reasons, the decision of the Commissioner is **AFFIRMED.**

*Background*

The plaintiff, Doretha H., filed an application for Disability Insurance Benefits on October 18, 2017, alleging a disability onset date of October 18, 2017. (Tr. 15). The claim was denied initially on January 26, 2018, and upon reconsideration on May 16, 2018. (Tr. 15). On May 30, 2018, Doretha H. filed a written request for a hearing pursuant to 20 CFR § 404.929. (Tr. 15). The hearing was held on March 8, 2019, before Administrative Law Judge Robert Long. (Tr. 15). Vocational Expert (VE) Theresa Wolford appeared at the hearing. (Tr. 15). On July 25, 2019, the ALJ issued an unfavorable decision. (Tr. 15-25). Doretha H. then filed this petition for judicial review on September 21, 2020.

---

[1] To protect privacy, the plaintiff's full name will not be used in this Order.
[2] Andrew M. Saul was the original Defendant in this case. He was sued in his capacity as a public officer. On July 9, 2021, Kilolo Kijakazi became the acting Commissioner of Social Security. Pursuant to **Federal Rule of Civil Procedure 25(d)**, Kilolo Kijakazi has been automatically substituted as a party.

At step one of the five-step sequential analysis for determining whether an individual is disabled, the ALJ found that Doretha H. had not engaged in substantial gainful activity since October 18, 2017, the alleged onset date. (Tr. 18).

At step two, the ALJ determined that Doretha H. had the following severe impairments: chronic obstructive pulmonary disease (COPD) with respiratory failure and hypoxia; asthma; depression; and post-traumatic stress disorder (PTSD). (Tr. 18). The ALJ found that Doretha H.'s severe impairments significantly limited her ability to perform basic work activities. (Tr. 18). The ALJ also found that Doretha H. had the medically determinable impairments of obesity and osteoarthritis of the left knee. However, her obesity, alone or in combination, did not meet or medically equal a listed impairment as Doretha H. was 5'2" tall and weighed 165 pounds. (Tr. 18).

At step three, the ALJ concluded that Doretha H. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 18). The ALJ considered whether the severity of Doretha H.'s impairments met or medically equaled the criteria of Listings 3.02, 3.03, 12.04, and 12.15. (Tr. 19). The ALJ considered the paragraph B criteria for mental impairments, which required at least one extreme or two marked limitations in a broad area of functioning which include:

> understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing themselves.

(Tr. 19). The ALJ indicated that a marked limitation meant the ability to function independently, appropriately, effectively, and on a sustained basis was seriously limited, while an extreme limitation was the inability to function independently, appropriately, or effectively, and on a

2

sustained basis.  (Tr. 19).  The ALJ found that Doretha H. had a moderate limitation in understanding, remembering, or applying information; a moderate limitation interacting with others; a moderate limitation concentrating, persisting, or maintaining pace; and a moderate limitation adapting or managing herself.  (Tr. 19).  Because Doretha H.'s mental impairments did not cause at least two "marked" limitations or one "extreme" limitation, the ALJ determined that the paragraph B criteria were not satisfied.  (Tr. 19).

At step three, the ALJ concluded that Doretha H. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.  (Tr. 19-20).

After consideration of the entire record, the ALJ then assessed Doretha H.'s residual functional capacity (RFC) as follows:

> [T]he claimant has the residual functional capacity to lift and carry up to 20 pounds occasionally, 10 pounds frequently, stand/or walk about 6 hours in an 8-hour workday and sit about 6 hours in an 8-hour workday with normal breaks. The claimant must avoid concentrated exposure to temperature extremes, humidity, and vibration. She must avoid all but ambient exposure to fumes, odors, dust, gases, poor ventilation. From a mental perspective, the claimant can understand, remember, and carry out simple, routine, and repetitive tasks. She is limited to only occasional interaction with supervisors, coworkers, and the public. In addition to those restrictions set forth above, the claimant must be able to use oxygen 24 hours a day.

(Tr. 20).  The ALJ explained that in considering Doretha H.'s symptoms he followed a two-step process.  (Tr. 20).  First, he determined whether there was an underlying physical or mental impairment that was shown by a medically acceptable clinical or laboratory diagnostic technique that reasonably could be expected to produce Doretha H.'s pain or other symptoms.  (Tr. 20). Then he evaluated the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limited Doretha H.'s functioning.  (Tr. 20).

After considering the evidence, the ALJ found that Doretha H.'s medically determinable impairments reasonably could have been expected to cause some of the alleged symptoms. (Tr. 22). However, the ALJ concluded that Doretha H.'s statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Tr. 22).

At step four, the ALJ determined that Doretha H. had been unable to perform any past relevant work. (Tr. 23). Considering Doretha H.'s age, education, work experience, and RFC, the ALJ concluded that there were jobs that existed in significant numbers in the national economy that she could have performed, including charge account clerk (204,000 jobs nationally), final assembler (229,000 jobs nationally), and document preparer (97,000 jobs nationally). (Tr. 25). The ALJ found that Doretha H. was not under a disability within the meaning of the Social Security Act from October 18, 2017 through July 25, 2019, the date of the unfavorable decision. (Tr. 25).

*Discussion*

The standard for judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is limited to a determination of whether those findings are supported by substantial evidence. **42 U.S.C. § 405(g)** ("The findings of the Commissioner of Social Security, as to any fact, if supported by substantial evidence, shall be conclusive"); **Moore v. Colvin**, 743 F.3d 1118, 1120–21 (7th Cir. 2014); **Bates v. Colvin**, 736 F.3d 1093, 1097 (7th Cir. 2013) ("We will uphold the Commissioner's final decision if the ALJ applied the correct legal standards and supported her decision with substantial evidence"). Courts have defined substantial evidence as such relevant "evidence as a reasonable mind might accept to support such a conclusion." **Zoch v. Saul**, 2020 WL 6883424, at *3 (7th Cir. Nov. 24, 2020); **Biestek v.**

4

*Berryhill*, 139 S. Ct. 1148, 1154 (2019); *Bates*, 736 F.3d at 1098. A court must affirm an ALJ's decision if the ALJ supported his findings with substantial evidence and if there have been no errors of law. *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citations omitted). However, "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez ex rel Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003).

Disability insurance benefits are available only to those individuals who can establish "disability" under the terms of the Social Security Act. The claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." **42 U.S.C. § 423(d)(1)(A)**. The Social Security regulations enumerate the five-step sequential evaluation to be followed when determining whether a claimant has met the burden of establishing disability. **20 C.F.R. § 404.1520**. The ALJ first considers whether the claimant is presently employed and "doing . . . substantial gainful activity." **20 C.F.R. § 404.1520(b)**. If she is, the claimant is not disabled and the evaluation process is over. If she is not, the ALJ next addresses whether the claimant has a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities." **20 C.F.R. § 404.1520(c)**; *see Williams v. Colvin*, 757 F.3d 610, 613 (7th Cir. 2014) (discussing that the ALJ must consider the combined effects of the claimant's impairments). Third, the ALJ determines whether that severe impairment meets any of the impairments listed in the regulations. **20 C.F.R. § 401, pt. 404, subpt. P, app. 1**. If it does, then the impairment is acknowledged by the Commissioner to be conclusively disabling. However, if the impairment does not so limit the claimant's remaining capabilities, the ALJ reviews the claimant's "residual functional capacity" and the physical and

mental demands of her past work. If, at this fourth step, the claimant can perform her past relevant work, she will be found not disabled. **20 C.F.R. § 404.1520(e)**. However, if the claimant shows that her impairment is so severe that she is unable to engage in her past relevant work, then the burden of proof shifts to the Commissioner to establish that the claimant, in light of her age, education, job experience, and functional capacity to work, is capable of performing other work and that such work exists in the national economy. **42 U.S.C. § 423(d)(2); 20 C.F.R. § 404.1520(f);** *see* ***Biestek v. Berryhill,*** 139 S. Ct. 1148 (2019) (upon the request of a disability benefits applicant, a vocational expert's refusal to provide the private market-survey data underlying her opinion regarding job availability does not categorically preclude the expert's testimony from counting as "substantial evidence" but, instead, the inquiry is case-by-case).

Doretha H. has requested that the court remand this matter for additional proceedings, or in the alternative, reverse the ALJ's decision and award benefits. In her appeal, Doretha H. broadly argues that the ALJ's decision was defective because the RFC did not account for her various illnesses and medications. More specifically, Doretha H. argues that: (1) the ALJ failed to account for her nebulizer use; (2) the ALJ incorrectly assessed her residual functional capacity; (3) the ALJ failed to account for oxygen use; and (4) the ALJ incorrectly assessed her reported symptoms and limitations.

"The RFC is an assessment of what work-related activities the claimant can perform despite his limitations." ***Young v. Barnhart***, 362 F.3d 995, 1000 (7th Cir. 2004); *see* **20 C.F.R. § 404.1545(a)(1)** ("Your residual functional capacity is the most you can still do despite your limitations"); SSR 96-8p, at *2 ("RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity

to do work-related physical and mental activities"). The RFC is based upon medical evidence—including statements from medical sources about what the claimant still can do—as well as "other evidence, such as testimony by the claimant or his friends and family." ***Craft v. Astrue***, 539 F.3d 668, 676 (7th Cir. 2008); **20 C.F.R. §§ 404.1545(a)(3)**, **416.945(a)(3)**.

SSR 96-8p explains how an ALJ should assess a claimant's RFC at steps four and five of the sequential evaluation. In a section entitled, "Narrative Discussion Requirements," SSR 96-8p specifically spells out what is needed in the ALJ's RFC analysis. This section of the Ruling provides:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

SSR 96-8p. Thus, as explained in this section of the Ruling, there is a difference between what the ALJ must contemplate and what he must articulate in his written decision. "The ALJ is not required to address every piece of evidence or testimony presented, but he must provide a 'logical bridge' between the evidence and his conclusions." ***Getch v. Astrue***, 539 F.3d 473, 480 (7th Cir. 2008) (quoting ***Clifford v. Apfel***, 227 F.3d 863, 872 (7th Cir. 2000)); *see* ***Moore v. Colvin***, 743 F.3d 1118, 1123 (7th Cir. 2014). Although the ALJ does not need to discuss every piece of evidence, he cannot ignore evidence that undermines his ultimate conclusions. ***Moore***, 743 F.3d at 1123 ("The ALJ must confront the evidence that does not support his conclusion and explain why that evidence was rejected") (citing ***Terry v. Astrue***, 580 F.3d 471, 477 (7th Cir.

2009); *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009); *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012)).

Doretha H.'s first argues that the ALJ failed to account for nebulizer treatments which she testified to needing every four hours for periods of 15-30 minutes at a time. (Tr. 44-45). She claims that the ALJ did not discredit her testimony and that the vocational expert testified that the use of a nebulizer would be work preclusive. She contends that, because the ALJ made no findings that conflict "with this required nebulizer use," the only reasonable conclusion was a finding of disability.

In response, the Commissioner argues that while the ALJ acknowledged Doretha H.'s testimony regarding the nebulizer, she failed to meet her burden of establishing the limitation she alleged. At the hearing, Doretha H. alleged that she took "two puffs every four hours" which the ALJ noted was more consistent with a description of using an inhaler. (Tr. 44-45). Doretha H. clarified that she was referring to her inhaler, but also that she used the nebulizer every four hours for 15-30 minutes at a time. (Tr. 44-45). The Commissioner also argues that there was no objective medical evidence in the record that supported Doretha H.'s alleged need to use the nebulizer treatment every four hours.

An ALJ must "articulate at some minimal level h[is] analysis of the evidence" and may not "ignore an entire line of evidence that is contrary to [her] findings." *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001); *Suetkamp v. Saul*, 406 F.Supp.3d 715, 719 (N.D. Ind. Aug. 27, 2019). An ALJ "cannot simply cherry-pick facts surrounding a finding of non-disability while ignoring evidence that points to a disability finding." *Reinaas v. Saul*, 953 F.3d 461, 466 (7th Cir. 2020) (finding that the claimant cannot "prevail by arguing that the ALJ improperly weighed the evidence" but can prevail if the "ALJ overlooked entire swaths of it"). Therefore, "an ALJ's

decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." ***Suetkamp***, 406 F.Supp.3d at 719 (citing ***Lopez ex rel. Lopez v. Barnhart***, 336 F.3d 535, 539 (7th Cir. 2003).

Here, Doretha H.'s argument regarding the alleged failure to consider her nebulizer use is unpersuasive. Doretha H. is misconstruing the ALJ's discussion of her nebulizer use. The ALJ did not accept her opinion that she needed it every four hours for 15-30 minutes at a time. Additionally, Dorthea H. did not cite to any objective medical evidence that supported her alleged need. In fact, there were several objective medical records that the ALJ cited in determining that Doretha H.'s statements about the intensity, persistence, and limiting effects of her impairments were not consistent. (Tr. 21-23). A pulmonary function report from December of 2017 showed that her $FEV_1$, FVC, DLCO, and $SpO_2$ results were all well within normal range, and Dr. Hakan Safad concluded that the test showed "early obstructive defect with no restrictive changes…lung volume within normal limits…[and] diffusion capacity was mildly reduced." (Tr. 559-60). Dr. Safad recommended bronchodilators and that Doretha H. quit smoking. (Tr. 560). Doretha H.'s medical records showed she smoked marijuana "daily, a lot" and that she had been smoking since the age of 26. (Tr. 339-40, 345, 461, 583-84).

Another pulmonary function report completed in January of 2018 again showed Doretha H.'s $FEV_1$ and FVC levels were within normal range, and that her $FEV_1$ was 100% predicted, all of which further discredits Doretha H.'s alleged need for a nebulizer every four hours. (Tr. 413-14). The ALJ also included a detailed description of Doretha H.'s third pulmonary function results from April of 2018 noting that, once again, her "pulmonary levels [we]re well within the normal range." (Tr. 22).

9

After a review of the record, there is only one record from Dr. Olusegun Apata, Doretha H.'s pulmonologist, from December of 2018 noting that she was prescribed albuterol nebulization treatments "every 4 hours as needed" but also that her COPD and asthma were improving. (Tr. 607-08). Otherwise, Dr. Apata consistently rated her asthma as mild to moderate, her COPD was moderate with occasional exacerbations, and noted that she continued to smoke marijuana daily despite his repeated advice to quit smoking due to her medical conditions. (Tr. 396, 427-28, 580, 599, 604). Records from CVS Pharmacy showed that Doretha H. filled a prescription for the medication used in her nebulizer machine for the first time in February of 2018, directly contradicting her testimony that she has needed this nebulizer treatment every day, multiple times per day since at least 2017. (Tr. 292). The court also notes that Doretha H. herself submitted a list of her medications to the Agency in October of 2018, and only listed two handheld inhalers: Breo Ellipta, one puff for asthma, and Combivent, two puffs for emphysema. (Tr. 286). She did not list daily nebulizer treatments. (Tr. 286).

There is no objective medical evidence that Doretha H.'s conditions were so severe that nebulizing treatment was required every 4 hours. As such, the ALJ did not err when he did not accommodate this alleged limitation in the RFC. *Gedatus v. Saul*, 994 F.3d 893, 905 (7th Cir. 2021); *Hill v. Saul*, 2021 WL 1207597 at *2 (N.D. Ind. Mar. 31, 2021) (reminding the claimant that she "bears the burden of proving a disability and presenting medical evidence supporting her allegations").

Next, Doretha H. argues that the ALJ incorrectly assessed her residual functioning capacity with respect to her moderate restrictions in concentration, persistence, or pace. The ALJ determined that Doretha H. "c[ould] understand, remember, and carry out simple, routine, and repetitive tasks" and that she was "limited to only occasional interaction with supervisors,

coworkers, and the public." (Tr. 20). Doretha H. claims that this type of language was fatal, citing to cases where the Seventh Circuit criticized ALJs who limited claimants to unskilled work or work that only involved simple, routine or repetitive tasks because that failed to account for their moderate restriction in concentration, persistence, or pace. She primarily relies on ***Crump v. Saul***, 932 F.3d 567 (7th Cir. 2019) and ***Winsted v. Berryhill***, 923 F.3d 472 (7th Cir. 2019) to support her position.

In ***Crump***, the claimant applied for disability benefits based on mental health impairments including bipolar disorder and polysubstance abuse disorder. 932 F.3d at 568. The claimant's mental health disorders resulted in hospital stays including a 72-hour court ordered stay to medicate her involuntarily. ***Crump***, 932 F.3d at 568. As a result, the ALJ found that she had "moderate difficulties maintaining concentration, persistence, or pace," but that those "difficulties were offset" by a doctor's opinion that the claimant "was attentive, persistent, and focused" during appointments. 932 F.3d at 569. This led "the ALJ to conclude that [the claimant] had the residual functional capacity, or RFC, to perform light work limited to 'simple, routine, repetitive tasks with few workplace changes' because of 'issues concentrating due to racing thoughts from bipolar disorder.'" 932 F.3d at 569. The claimant challenged the ALJ's finding arguing that he "did not adequately account for her moderate limitations in concentration, persistence, or pace—often shorthanded as CPP limitations—in finding that she had the functional capacity to perform "simple, routine, repetitive tasks with few workplace changes." 932 F.3d at 569-70. The Seventh Circuit agreed and held that "the medical evidence plainly show[ed], and the ALJ recognized, that [the claimant] suffer[ed] from CPP limitations." 932 F.3d at 570. The court said "pay[ing] attention in the doctor's office and thus in the context of a structured, relatively short mental health examination, an altogether different environment than a

full day at a competitive workplace with sustained demands." 932 F.3d at 571. The Seventh Circuit pointed to its holding in *Jozefyk v. Berryhill*, 923 F.3d 492 (7th Cir. 2019) to differentiate the facts in *Crumb*. In *Jozefyk*, it "determined that any error in formulating the RFC was harmless because the claimant had not testified about any restrictions in his capabilities related to concentration, persistence, or pace, [] the medical evidence did not otherwise support any such limitations," and there was a lack of medical evidence. *Crump*, 932 F.3d at 571.

Similarly, in *Winsted*, the claimant was diagnosed with multiple mental and physical impairments, and the ALJ relied heavily on the VE's answer to a hypothetical question which did not "direct the expert to consider problems with concentration, persistence, and pace." 923 F.3d at 477. The Seventh Circuit clarified that "where a claimant's limitations are stress-related…the hypothetical question should account for the level of stress a claimant can handle." 923 F.3d at 477. The Seventh Circuit also found that "when an ALJ finds there are documented limitations of concentration, persistence, and pace, the hypothetical question presented to the VE must account for these limitations." 923 F.3d at 477. As a result, the court concluded that, because the ALJ's hypothetical question to the VE "did not capture one of Winsted's most significant problems— his concentration-functioning deficits— … further proceedings [we]re necessary on that issue only." 923 F.3d at 479.

The Commissioner argues that these cases are distinguishable from the present case and the court agrees. In *Crump*, the claimant's mental limitations were well-documented and much more severe than the limitations Doretha H. alleges. Additionally, in *Crump*, the ALJ disregarded the opinions of the claimant's treating psychiatrist who consistently opined that her conditions made her unable to work. 932 F.3d at 571. Here, the ALJ noted that, while the State Agency doctor and Doretha H.'s treating psychologist had very different assessments of Doretha

H.'s mental limitations, it "d[id] not mean the opposite and extreme opinions [we]re suitable either." (Tr. 23). The State Agency mental status examiner wrote that Doretha H.'s "attention and concentration were fair." (Tr. 418). In November 2017, Dr. Critton-Green opined that Doretha H.'s depression interfered with her concentration, but, in March 2018, Dr. Critton-Green decided to readminister "Burn's self-report on depression since patient's mood appears to be lifting." (Tr. 400, 505). This reassessment was after Dr. Critton-Green's mental residual functional assessment in February 2018 opining that Doretha H. would be off-task 21% of the time or more because she would need frequent rest breaks. (Tr. 423). The ALJ considered that in determining that Doretha H. had only moderate limitations in concentration, persistence, and pace due to "the distraction of her physical issues…triggers from PTSD, and…breathing problems/having to switch to oxygen." (Tr. 19).

*Winsted* is also distinguishable for similar reasons. The claimant in *Winsted* had been seeing his treating psychiatrist for over two years, had consistently low GAF scores, and had severe social anxiety. 923 F.3d at 477. The ALJ asked the VE questions that possibly accounted for the claimant's social anxieties, but it was not clear whether the question also covered the claimant's documented problems with concentration, persistence, or pace. 923 F.3d at 477. The Seventh Circuit determined that to be error because multiple doctors had opined that the claimant had serious issues with concentration and attention. *Winsted*, 923 F.3d at 477. His treating psychiatrist diagnosed him with major depressive disorder and indicated he had "a serious impairment in social or occupational functioning." *Winsted*, 923 F.3d at 474. The Agency psychologist opined that the claimant had "below average levels of mental control, understanding and memory, and concentration; poor levels of persistence; and he did not do well in social situations." *Winsted*, 923 F.3d at 475. Based on those records, the Seventh Circuit held

13

that the ALJ's hypothetical questions to the VE did not account for these documented issues and remanded the case. *Winsted*, 923 F.3d at 479.

In the present case, there is no objective medical evidence in the record, nor does Doretha H. cite any records supporting her argument, that would suggest that the hypothetical question failed to account for her moderate limitations in concentration, persistence, or pace. Doretha H. cites to instances where doctors noted she was anxious, had shortness of breath or wheezing, and disturbed sleeping patterns to support her argument that the ALJ's hypothetical questions to the VE were insufficient. The Commissioner noted, and the court agrees, that the ALJ sufficiently explained his step-three findings with regard to Doretha H.'s moderate limitation in concentration, persistence, or pace. The ALJ noted that Doretha H.'s issues with concentration, persistence, or pace were due in part to her physical impairments. (Tr. 19). Unlike the claimant in *Winsted*, Doretha H. does not have multiple doctors noting problems with concentration, persistence, or pace. In fact, her treating psychologist, Dr. Critton-Green, completed a mental RFC assessment in February 2018 that largely supported the ALJ's moderate limitations. (Tr. 421-23).

Dr. Critton-Green determined that Doretha H. had moderate limitations in her ability to remember locations and work-like procedures, to understand and remember very short and simple instructions, and that Doretha H. was only mildly limited in carrying out these instructions. (Tr. 422). The ALJ specifically incorporated Dr. Critton-Green' assessment that Doretha H. only had a moderate limitation in maintaining attention and concentration for extended periods and that she could make simple work-related decisions. (Tr. 23, 422). Doretha H. argues that the ALJ failed to reconcile Dr. Critton-Green's assessment that she would be off-task 21% of the time or more but the court disagrees. The ALJ noted that Doretha H.'s issues

with concentration, persistence, and pace seemed to stem from her physical impairments based on Doretha H.'s own functional report and her testimony at the hearing. (Tr. 19). She reported that she had trouble completing daily activities due to fatigue from her physical conditions which the ALJ accommodated for in the RFC. (Tr. 19, 22-23). The ALJ also determined that her PTSD was sufficiently controlled by her medication based on Dr. Critton-Green's records showing improvement in Doretha H.'s mental state and "no clinical findings show[ing] more than moderate exacerbation of the claimant's functional domains." (Tr. 22).

"The question we consider on review is not whether an alternative finding may also be supported by substantial evidence. Rather, we ask whether the final agency finding…is supported by substantial evidence." **Schloesser v. Berryhill**, 870 F.3d 712, 721 (7th Cir. 2017). The Supreme Court has defined "substantial evidence" as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." **Richardson v. Perales**, 402 U.S. 389, 401 (1971) (Internal quotations and citations omitted). "The ALJ is not required to discuss every piece of evidence but must build a logical bridge from evidence to conclusion." **Villano v. Astrue**, 556 F.3d 558, 562 (7th Cir. 2009). Here, the ALJ satisfied his burden. The ALJ provided detailed explanations of the inconsistencies he found between Doretha H.'s testimony and the objective medical evidence. (Tr. 19-23). He also fully explained how he reconciled the conflicting records and testimony about her limitations in concentration, persistence, and pace showing that a moderate limitation was supported by substantial evidence. (Tr. 19-23). The ALJ explained his decision "in such a way that allow[ed] us to determine whether [he] reached [his] decision in a rational manner, logically based on [his] specific findings and the evidence in the record. **McKinzey v. Astrue**, 641 F.3d 884, 890 (7th Cir.

2011). As such, this court does not find that the ALJ's hypothetical questions and subsequent RFC determination warrants remand.

Doretha H.'s third argument is that the ALJ failed to account for her oxygen use. Doretha H. argues that the ALJ did not meet his burden at Step 5 in establishing that a significant number of jobs exist in the national economy that she could perform. With that, Doretha H. also contends that it is unclear whether the number of jobs provided by the vocational expert at the hearing were reduced to account for employers who would not tolerate her oxygen use.

The Commissioner responded by pointing out that the ALJ specifically asked the VE if Doretha H.'s oxygen use would be work preclusive, and the VE replied affirmatively only with respect to Doretha H.'s past work and any light work jobs. (Tr. 52-53). The VE clarified that the DOT guidelines did not address oxygen use and that based on her experience, there "may be a reduction in some of the numbers." (Tr. 52-53). Even so, the VE listed three different positions with significant jobs in the economy that Doretha H. could perform with her limitations. (Tr. 52-53).

Doretha H. relies on ***Cleveland v. Policy Management Systems Corp.***, 526 U.S. 795 (1999) to support her claim that the ALJ could not consider work that included accommodations by the employer.  There, the Supreme Court held that "when the SSA determines whether an individual is disabled for SSDI purposes, it does not take the possibility of 'reasonable accommodation' into account, nor need an applicant refer to the possibility of reasonable accommodation when she applies for SSDI." 526 U.S. at 803.  The court in ***Zon v. Saul***, 2020 WL 4593330, at *3 (N.D. Ind. Aug. 10, 2020) interpreted the ***Cleveland*** Court's holding "to mean [that] the Commissioner cannot consider the possibility that a claimant will receive an accommodation in determining whether they would be able to hold a job. In other words, the

16

Commissioner could not determine that [the claimant] is disabled unless he received a reasonable accommodation and then find him not disabled under the assumption that he will receive that accommodation in the future." The court went on hold:

> When determining whether a claimant has the ability to perform substantial gainful activity, and therefore is not disabled, the ALJ must consider whether the work a claimant is doing is done under special conditions to take into account h[er] impairment … In doing so, the ALJ must adequately discuss any special condition a claimant may have and explain whether it shows that [s]he cannot do substantial gainful activity.

**Zon**, 2020 WL 4593330, at *3 (N.D. Ind. Aug. 10, 2020).

The ALJ determined that Doretha H. was reliant on oxygen 24/7, and the VE opined there were jobs Doretha H. could sustain with oxygen use, but the numbers may be reduced based on the employer's tolerance of Doretha H.'s oxygen use. (Tr. 20, 52-53). The ALJ did not consider the possibility that Doretha H. might receive an accommodation when he determined that Doretha H. would be able to hold a job. Rather, he relied specifically on the VE's testimony that there were sedentary level jobs that existed in significant numbers that Doretha H. could sustain even with her constant oxygen use.

Doretha H.'s final argument is that the ALJ incorrectly assessed her reported symptoms and limitations. **Pl.'s Br.** at 11. The Commissioner responded in its brief that the ALJ had correctly assessed Doretha H.'s symptoms and limitations because he did not have to credit every subjective symptom and limitation she alleged. **Def.'s Br.** at 13-14. This court agrees with the Commissioner for many of the reasons discussed in the previous sections. "When assessing an ALJ's credibility determination, we do not…undertake a *de novo* review of the medical evidence that was presented to the ALJ. Instead, we merely examine whether the ALJ's determination was reasoned and supported." **Elder v. Astrue**, 529 F.3d 408, 413 (7th Cir. 2008).

In this case, the ALJ supported his belief that Doretha H.'s statements about the limiting effects of her condition were not entirely consistent with the record with numerous citations to objective medical records. (Tr. 22-23). The court discussed the most relevant inconsistencies when it determined that Doretha H. had not met her burden with respect to her nebulizer treatments. As such, it is not necessary to re-hash them again outside of reiterating that "subjective complaints need not be accepted insofar as they clash with other, objective medical evidence on the record." *Arnold v. Barnhart*, 473 F.3d 816, 823 (7th Cir. 2007).

Based on the foregoing reasons, the decision of the Commissioner is **AFFIRMED.**

ENTERED this 22nd day of September, 2021.

/s/ Andrew P. Rodovich
United States Magistrate Judge